# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NESTOR TERCERO** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-7438** |
| **OCEANEERING INTERNATIONAL, INC. ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion[1] *in limine* filed by plaintiff Nestor Tercero ("Tercero"). Tercero moves the Court to prohibit defendant Oceaneering International, Inc. ("Oceaneering") from introducing five exhibits: (1) photos of an alleged "available step ladder"; (2) Tercero's B1-OCS Employment contract with Sonoco, Tercero's former employer; (3) a statement by witness Cleodis Poindexter; (4) Tercero's driver's license; and (5) Tercero's visa.[2] The motion also requests that the Court prohibit defendant Encore Food Services, LLC ("Encore") from introducing Poindexter's statement. Tercero has also submitted objections to Poindexter's deposition transcript.

For the following reasons, the motion *in limine* is granted in part and deferred in part. Additionally, Tercero's objections to Poindexter's deposition are sustained in part, overruled in part, and deferred in part.

---

[1] R. Doc. No. 75.
[2] Tercero also objected to each of these exhibits in the parties' proposed pretrial order. *See* R. Doc. No. 70.

## I.

Tercero alleges that, on September 7, 2016, he was injured while working as a galleyhand on board the M/V OCEAN INTERVENTION. Tercero claims that he was ordered to clean the ceiling in the galley and that he was provided with a small step ladder with which to perform the task. As he was cleaning the ceiling, Tercero fell from the step ladder, which he asserts was not a proper piece of equipment with which to perform task. Tercero alleges that he sustained personal injuries as a result of the fall, and he filed the present lawsuit asserting a variety of claims.

## A.

Oceaneering seeks to introduce into evidence photos of a step ladder that Oceaneering alleges was available for use on the vessel on the date of Tercero's accident. Tercero argues that the photos should be excluded because there is no evidence that the pictured step ladder was on the vessel on September 7, 2016, the date of Tercero's accident, and the photos have not been properly authenticated.[3]

"Authentication of a document is a condition precedent to its admission." *United States v. Ceballos*, 789 F.3d 607, 617 (5th Cir. 2015). Pursuant to Rule 901(a) of the Federal Rules of Evidence, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Notably, the Fifth Circuit does not require "conclusive proof of authenticity before allowing the admission of disputed evidence." *Ceballos*, 789 F.3d at 618 (quoting *United States v.*

---

[3] R. Doc. No. 75-1, at 1–2.

*Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989)). The proponent may authenticate the evidence in a number of ways, including testimony by a witness with knowledge that the item is what it is claimed to be. Fed. R. Evid. 901(b)(1).

Cleodis Poindexter ("Poindexter") was a cook employed by Oceaneering, and he was Tercero's supervisor at the time of the accident. Tercero's counsel deposed Poindexter on February 15, 2018, during which, Oceaneering argues, Poindexter identified and authenticated the photograph.

At Poindexter's deposition, Tercero's counsel asked Poindexter how many ladders were in the galley, to which he responded that there were two—the small one that Tercero used as well as a taller one.[4] Tercero's counsel then showed Poindexter a photo of a taller ladder, the photo at issue, and Poindexter confirmed that the ladder in the photo was the taller ladder to which he was referring and that it was in the galley available for use at the time of Tercero's accident.[5] Notwithstanding, the Court will defer a decision as to its admissibility until trial, when the evidence has been introduced.

**B.**

Tercero also asks the Court to exclude as hearsay a statement made by Poindexter. Both Oceaneering and Encore listed Poindexter's statement as an exhibit. The day after Tercero's accident, Poindexter provided the following written statement:

---

[4] R. Doc. No. 88, at 1–2.
[5] R. Doc. No. 88, at 2 (citing R. Doc. No. 88-1, at 4–7, 9, 10).

> At 2030 hrs, Galley Hand N. Tercero went out to Mess area to clean ceiling tiles. He grabbed the 2-step ladder out of the pantry to do so. I was cleaning the ceiling tiles inside the Galley when I heard a thump and asked him what was going on. N. Tercero said he fell. I asked him if he was okay and he said "yeah". Later on, around 2300 hrs, N. Tercero said that his back was feeling a little tense. I told him I couldn't give him any medication and to take a break and relax for a minute. I suggested coming to [the] Bridge to get some Tylenol. Around 0230, N. Tercero came to me and said that his back was in more pain and I asked him how he fell and he told me he had one foot on the ladder and one foot on the chair in the crew's mess. He lost his footing and fell. I proceeded to take him up to the Bridge to get him some attention.[6]

Pursuant to Rule 801(c) Federal Rules of Evidence, "hearsay" is a "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Hearsay is generally inadmissible as competent evidence at trial. Fed R. Evid. 802. However, the Federal Rules of Evidence recognize exceptions to this general rule. *See* Fed. R. Evid. 803 (exceptions applicable regardless of a declarant's availability to testify at trial).

Tercero argues that Poindexter's statement is hearsay because it is a statement made out of court and it will be offered for the truth of the matters asserted in the statement.[7] Tercero further asserts that the hearsay exceptions do not apply.

Defendants argue that the statement is admissible for a number of reasons. First, defendants argue it should be admitted because Poindexter referred to the

---

[6] R. Doc. No. 78-1.
[7] R. Doc. No. 75-1, at 4.

4

statement in his deposition and it was attached to the deposition.[8] Defendants further assert that, because Poindexter will not be available at trial, his testimony will be introduced by way of his deposition and the full statement is needed to give context to the jury.[9]

During his deposition, Poindexter referred to his statement and also testified to facts mentioned in his statement. There is no dispute as to the admissibility of the facts to which he testified. The Court is unaware of, and the parties do not cite to, any legal support for the proposition that an out-of-court statement is admissible into evidence simply because that statement was referred to and attached to a deposition.

Second, defendants argue that the statement is not hearsay because it is a declarant witness's prior statement. Defendants do not, however, direct the Court to which portion of Rule 801 they rely upon. Defendants do not provide the Court with legal arguments that would support the applicability of the specific subsections of Rule 801(d)(1). Defendants have, therefore, waived this argument. The Court will not forage through Rule 801 and make defendants' arguments for them.[10]

---

[8] R. Doc. No. 88, at 4–5; R. Doc. No. 88-1, at 7; R. Doc. No. 92, at 1–2; R. Doc. No. 92-1, at 2.
[9] R. Doc. No. 88, at 4.
[10] Encore further argues that the statement should be admitted because Poindexter adopted the statement by relying on it in his deposition. R. Doc. No. 92, at 2. To support this argument, Encore cites to the comment to Rule 801(d)(1):

> Considerable controversy has attended the question whether a prior out-of-court statement by a person now available for cross-examination concerning it, under oath and in the presence of the trier of fact, should be classed as hearsay. If the witness admits on the stand that he made

Oceaneering also argues that the statement is admissible as Poindexter's present sense impression pursuant to Rule 803. The present sense impression exception applies to a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "The basis for this hearsay exception 'relies on the contemporaneousness of the event under consideration and the statement describing that event. Because the two occur almost simultaneously, there is almost no "likelihood of [a] deliberate or conscious misrepresentation." ' " *United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012) (quoting *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991) (citations omitted)). In *Polidore*, the Fifth Circuit explained that the present sense impression exception applied because the witness "described and explained events he personally witnessed" and "made the statements contemporaneously with his observation of the events—*i.e.*, while he was observing the events or very soon thereafter." *Id*; *see also*

---

the statement and that it was true, he adopts the statement and there is no hearsay problem.

Fed. R. Evid. 801 (advisory committee notes to subdivision (d)(1)).

The argument is misplaced. To the extent that Poindexter referred to his statement in his deposition and testified as to individual facts in his statement, defendants have not shown where in the deposition Poindexter stated that the statement was true. Poindexter also never testified as to the entire statement. *See United States v. Demmitt*, 706 F.3d 665, 672 (5th Cir. 2013) ("As made clear in the committee note and our case law, the prior statement must be acknowledged and affirmed *on the stand* in order to be admissible as substantive evidence independent of use as a prior inconsistent statement."); *United States v. Lopez*, 282 F.3d 1, 17 (1st Cir. 2002) (citing 801(d)(1) advisory committee's note and 5 *Weinstein's Federal Evidence* 801.21[4] (J.M. McLaughlin ed., 2d ed. 2001) ("If a witness, questioned about a prior statement, admits on the stand that he or she made the statement and acknowledges that it is true, the witness thereby adopts the prior statement as his or her testimony.").

6

*Phillips v. General Motors Corp.*, No. 99-3423, 2000 WL 1407896, at *5 (E.D. La. Sept. 25, 2000) (Vance, J.) (finding that the present sense impression exception did not apply because the witness's "statement [did] not refer to an event or condition that he perceived. He [did] not describe his sense impressions upon seeing an event transpire.")

Poindexter's statement is dated September 8, 2016, the day after Tercero's accident. Oceaneering asserts that Tercero's accident occurred in the late hours of the night of September 7, 2016, and that Poindexter gave his statement "immediately after Poindexter assisted [Tercero] to the bridge . . . in the early morning hours of September 8, 2016."[11] Nevertheless, Poindexter's written statement was not made contemporaneously with his observation of Tercero's accident. Furthermore, the statement demonstrates that Poindexter did not observe the accident at all; the statement only details what occurred in the hours after Tercero's accident. The present sense impression exception to the hearsay rule does not apply to Poindexter's statement.

The Court grants Tercero's motion *in limine* and it excludes Poindexter's September 8, 2016 statement. If Poindexter is present to testify at trial, the Court will revisit this issue.

C.

Finally, the Court addresses the exhibits that concern Tercero's immigration status—that is, Tercero's B1-OCS Employment contract with Sonoco, Tercero's visa,

---

[11] R. Doc. No. 88, at 5.

and Tercero's Texas driver's license, each proposed by Oceaneering. On January 15, 2019, the Court ordered that there would be no mention of Tercero's visa, visa application, or immigration status at trial unless the Court ordered otherwise pursuant to a specific request by counsel prior to trial.[12] Tercero has objected to the above-mentioned exhibits because, he alleges, the exhibits expose Tercero's immigration status and violate the Court's order.

Tercero objects to Oceaneering attempting to introduce into evidence a B1-OCS Employment Contract by Sonoco, Tercero's former employer.[13] The exhibit includes the general job description of a galleyhand for Sonoco. Tercero does not seek to exclude the work description from evidence, but he seeks to exclude the document insofar as it reflects his immigration status and information about B1-OCS visas. Specifically, the document includes a section for the worker's transportation and travel arrangements, which refers to the worker's home country and travel documentation.[14]

Tercero seeks to exclude the introduction of his Texas driver's license and visas into evidence. Tercero also seeks to exclude the Texas Department of Public Safety's

---

[12] R. Doc. No. 65, at 1.
[13] R. Doc. No. 75-1, at 3; R. Doc. No. 75-6. Tercero was a B1-OCS employee of Sonoco. R. Doc. No. 75-6. B-1 visas "are available to nonimmigrant aliens who are 'visiting the United States temporarily for business or temporarily for pleasure.'" *United Ass'n of Journeyman and Apprentices of Plumbing and Pipe Fitting Indus. of U.S. and Canada, AFL-CIO, Local Union No. 412 v. Barr*, 982 F.2d 1269, 1272 n.2 (D.C.C. 1992) (quoting 8 U.S.C. § 1101(a)(15)(B)). Oceaneering explains that Tercero's B1-OCS visa was issued in connection with his work on the outer continental shelf. R. Doc. No. 88, at 7.
[14] R. Doc. No. 75-1, at 3; R. Doc. No. 75-6.

residency affidavit produced by Oceaneering, which Oceaneering asserts that Tercero submitted in order to obtain his driver's license.[15] Tercero argues that his immigration status, visas, and Texas driver's license and residency affidavit are irrelevant to any fact at issue in the litigation. He further argues that even if they are relevant, their relevance is outweighed by the danger of unfair prejudice pursuant to Rule 403.[16] According to Tercero, Oceaneering is using his immigration status for improper purposes, such as to harass, annoy, or embarrass Tercero, "including attempts to manufacture credibility issues when none exist."[17]

Oceaneering asserts that it is not introducing Tercero's Texas driver's license, Texas residency affidavit, or B1-OCS visa for the purpose of discussing Tercero's immigration status or for any other improper purpose.[18] Rather, Oceaneering seeks to introduce the exhibits because it argues that they are relevant to the issue of Tercero's credibility. Specifically, Oceaneering intends to present evidence at trial that Tercero "will make representations of facts when those misrepresentations benefit him."[19]

Because Oceaneering asserts that it only intends to raise issues related to Tercero's driver's license and visa on cross-examination to challenge Tercero's credibility, the Court will defer its decision and make a determination on their admissibility at trial. The Court's order precluding any party from mentioning

---

[15] R. Doc. No. 108.
[16] R. Doc. No. 75-1, at 4.
[17] R. Doc. No. 75-1, at 4.
[18] R. Doc. No. 88, at 7–8.
[19] R. Doc. No. 88, at 8.

9

Tercero's visa, visa application, or immigration status at trial remains in effect.[20] However, because Tercero has not moved to exclude the definition of a galleyhand in the B1-OCS employment contract, a redacted copy of the contract that provides a definition of a galleyhand, but eliminates all references to a B1-OCS visa or Tercero's immigration status would be admissible.

The Court reminds counsel that Rule 608(b) prohibits the admissibility of extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness," unless it concerns a criminal conviction under Rule 609. Fed. R. Evid. 608(b). However, "the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness."[21] Fed. R. Evid. 608(b)(1); *see also* Fed. R. Evid. 611 ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility.")

The introduction of the Texas residency affidavit and driver's license to prove Tercero's character for truthfulness may very well be prohibited by Rule 608(b). The parties have informed the Court that Tercero will not be present at trial, but will be testifying by way of his deposition. It is not clear to the Court, at this stage, whether the documents, which defendants seek to introduce, are authenticated and whether

---

[20] The Court notes that Tercero also moved to exclude the Texas residency affidavit on the basis that it was produced to Tercero after the parties' pretrial conference, during which the Court reopened discovery for the limited purpose of litigating the borrowed servant issue. Although Oceaneering requested and produced the documents beyond the discovery deadline, the Court will not exclude relevant documents on that basis alone.

[21] R. Doc. No. 116, at 2.

they are admissible. The Court defers a ruling on the use of such documents until trial.

## II.

Tercero objects to portions of Poindexter's deposition, arguing that Oceaneering's questions to its employee were leading.[22] In response, Oceaneering argues that the questions were asked on cross-examination so they were within the confines of Rule 611(c) of the Federal Rules of Evidence. Additionally, Oceaneering argues that Tercero waived these objections because the parties did not enter into a stipulation reserving such objections until such time as the deposition is introduced into evidence.[23] Oceaneering asserts that at the time of the deposition, it was anticipated that the deposition testimony would be used at trial because Poindexter resides in Marietta, Georgia.[24]

Under Rule 611, this Court has a "large degree of discretion in overseeing the examination of witnesses." *Sanders v. N.Y.C. Human Res. Admin*, 361 F.3d 749, 757 (2d Cir. 2004). Rule 611(c) states that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions on (1) cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."

---

[22] R. Doc. No. 75-1, at 5.
[23] R. Doc. No. 88, at 12. The Court will exercise its discretion and not deny such objections on procedural grounds.
[24] R. Doc. No. 88, at 12.

11

> The rule [ ] conforms to tradition in making the use of leading questions on cross-examination a matter of right. The purpose of the qualification "ordinarily" is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only, and not in fact, as for example the "cross-examination" of a party by his counsel after being called by the opponent (savoring more of re-direct) or of an insured defendant who proves to be friendly to the plaintiff.

Fed. R. Evid. 611 (note to subdivision (c)). Poindexter was an employee of Oceaneering at the time of the deposition.[25] The Court makes the following findings:

### A.

Deposition transcript page 75:1–19 (Doc. 75-7): Counsel for Tercero elicited this same testimony from Poindexter. *See* deposition transcript page 68:1–18 (Doc. 88-1). The objection is overruled.

### B.

Deposition transcript page 76:12–21 (Doc. 75-7): Counsel for Tercero elicited much of this same testimony from Poindexter. *See* deposition transcript pages 41–43 (Doc. 88-1). The objection is overruled.

### C.

Deposition transcript page 78:25–79:7 (Doc. 75-7): The objection is sustained.

Deposition transcript page 79:8–16 (Doc. 75-7): The parties have not provided the Court with the entire deposition and it is unclear what counsel for Oceaneering was referring to when talking about "three points of contact in it," and whether this

---

[25] To the extent defendants argue that Tercero waived these objections by failing to enter into a stipulation at the time of the deposition, the Court will not decide the issue on that basis.

had been addressed earlier in the deposition. The Court's ruling on the objection is deferred until trial.

Deposition transcript page 79:17–25 (Doc. 75-7): This portion of the deposition is not in response to a leading question. Also, Poindexter is repeating testimony already elicited by counsel for Tercero. *See* deposition transcript page 43 (Doc. 88-1). The objection is overruled.

### D.

Deposition transcript page 80:20–21 (Doc. 75-7): This question clarified the testimony that Poindexter had just given and that counsel for Tercero elicited from Poindexter. *See* deposition transcript pages 80:1–19 (Doc. 75-7) and 41–43 (Doc. 88-1). The objection is overruled.

Deposition transcript page 80:22–81:1 (Doc. 75-7): The objection is sustained.

### III.

Accordingly,

**IT IS ORDERED** that Tercero's motion *in limine* is **GRANTED IN PART** and **DEFERRED IN PART**.

**IT IS FURTHER ORDERED** that Tercero's objections to Oceaneering's questions in Poindexter's deposition transcript are **SUSTAINED IN PART**, **OVERRULED IN PART**, and **DEFERRED IN PART**, as stated herein.

New Orleans, Louisiana, February 27, 2019.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**