UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NESTOR TERCERO | * | CIVIL ACTION |
| VERSUS | * | NO.:  17-7438 |
| OCEANEERING INTERNATIONAL, INC. and ENCORE FOOD SERVICES, LLC | * | SECTION:     I |
| | * | MAGISTRATE:  1 |

\*     \*     \*     \*     \*     \*     \*

**PRETRIAL ORDER**

1.     On Tuesday, March 12, 2019 at 7:30 a.m., a pre-trial conference was held in chambers before the Honorable Lance M. Africk, United States District Judge.

2.     **APPEARANCE OF THE PARTIES**:

Present were:

Lawrence Blake Jones(7495)
David C. Whitmore    (17864)
Kristi A. Post  (17752)
Blake Jones Law Firm, LLC
701 Poydras Street, Suite 4100
New Orleans, Louisiana 70139
Telephone:  (504) 525-4361
Facsimile:  (504) 525-4380
jones@nola-law.com
dcw@nola-law.com
kpost@nola-law.com
Attorneys for Plaintiff, Nestor Tercero

For Defendant, Oceaneering International, Inc.:

Richard M. Simses (12306)
Cotten Schmidt, L.L.P.
25025 N. I-45, Suite 410
The Woodlands, Texas 77380
Telephone:  281-824-3551
Fax:  281-824-3555
E-Mail:  rsimses@cottenschmidt.com

1

Paul M. Lavelle (08134)
Cotten Schmidt, L.L.P.
650 Poydras St., Suite 1950
New Orleans, Louisiana 70130
Telephone:  504-568-9393
Fax:  504-524-1933
E-Mail:  plavelle@cottenschmidt.com

Henry H. LeBas #23185
Todd A. Delcambre #23710
Barry J. Rozas #21849
2 Flagg Place, Suite 1
Lafayette, Louisiana 70508
Telephone: 337-236-5500
Facsimile: 337-236-5590
*Counsel for Encore Food Services, Inc.*

3.     **BRIEF DESCRIPTION OF THE PARTIES:**

      a.     Plaintiff, Nestor Tercero, is a person of full age of majority and a resident of the State of Louisiana.

      b.     Defendant, OCEANEERING INTERNATIONAL, INC. (hereinafter referred to, as "OCEANEERING"), was, at all times pertinent hereto, the operator of M/V OCEAN INTERVENTION.

      c.     Encore Food Services, LLC is an organization organized under the laws of the State of Louisiana and operating out of Houma, LA.  It provides manpower for catering services in the oilfield.

4.     **JURISDICTION:**

      Jurisdiction is proper under 28 U.S.C. 1331, federal question jurisdiction.

      Plaintiff has asserted jurisdiction under the Jones Act and General Maritime Law.

5.     **PENDING MOTIONS:**

The parties anticipate filing Motions in Limine regarding exhibits and deposition testimony in accordance with the Court's order of February 19, 2019 [Doc. 123].

6.     **BRIEF SUMMARY OF MATERIAL FACTS:**

**1.     By plaintiff, Nestor Tercero:**

On or about September 7, 2016, plaintiff was employed by the defendants, Encore Food Services, Inc. and/or Oceaneering International, Inc., as a Jones Act seaman aboard the M/V OCEAN INTERVENTION, a vessel owned and/or operated by Oceaneering International, Inc. Plaintiff was working aboard the vessel in the interests of the defendants, performing his duties as a galley hand.  Plaintiff's supervisor aboard the vessel was Cleodis Poindexter, a cook employed by Oceaneering International, Inc.

The evidence will establish that plaintiff was the borrowed servant of Oceaneering International, Inc.  The evidence will show that:

(1) Oceaneering had control over the plaintiff and the work he was performing, beyond mere suggestion of details or cooperation;

(2) Oceaneering's work was being performed;

(3) There was an agreement, understanding, or meeting of the minds between the original and the borrowing employer;

(4) Mr. Tercero acquiesced in the new work situation;

(5) Encore terminated its relationship with Mr. Tercero while he was aboard Oceaneering's vessel;

(6) Oceaneering furnished the tools and place for performance;

(7) Oceaneering had the right to discharge the plaintiff; and

(8) Oceaneering had the obligation to pay plaintiff.

On September 7, 2016, Mr. Poindexter ordered the plaintiff to clean the galley aboard the vessel, and assigned the plaintiff the job of cleaning the ceiling in the galley.  In order to accomplish this job, plaintiff was provided with a small stepladder which was not proper and/or was otherwise an insufficient piece of equipment to perform the task of cleaning the ceiling.  The job also required plaintiff to use cleaning materials, including a cleaning liquid and rag which plaintiff had to hold in his hands, as the small stepladder did not have a place for plaintiff to put these materials while he was cleaning the ceiling.  As the plaintiff attempted to perform his assigned duties and clean the ceiling, he fell from the ladder and sustained personal injuries, including but not limited to injuries to his lower back and right shoulder.

After being examined at a clinic at the request of Encore, plaintiff came under the care of Dr. David Dunn at Westbank Physicians Rehab in Marrero, Louisiana.  Plaintiff underwent a course of conservative care and, on December 29, 2016, underwent MRI studies of the lumbar and cervical spine.  The MRI of the lumbar spine revealed a broad-based disc bulge with probable compromise of both L5 nerve roots and arthrosis of the facet joints at L3-4.  (The test also revealed evidence of a prior fusion at L5-S1 which plaintiff had disclosed on his pre-employment physical.)  The cervical study showed disc bulge at C6-7.

Mr. Tercero was then referred for an orthopedic evaluation and came under the care of Dr. David Wyatt, an orthopedic surgeon in New Orleans.  Dr. Wyatt continued efforts at conservative, non-surgical care, and attempted several lumbar epidural steroid injections, with limited relief of plaintiff's symptoms.  Due to plaintiff's persistent complaints of right shoulder pain, Mr. Tercero also underwent an MRI of the right shoulder on August 23, 2017.  Dr. Wyatt believed Mr. Tercero was suffering from impingement syndrome in his right shoulder.

Dr. Wyatt subsequently requested an EMG of the left lower extremity to determine whether plaintiff's left leg symptoms were due to the protrusion of the disc at L4-5 or was some residual from plaintiff's prior surgery at L5-S1.  The EMG confirmed that plaintiff's symptoms were related to radiculopathy from the left L4/L5 nerves.

Dr. Wyatt recommended left-sided L4-5 laminectomy and discectomy, and a right shoulder arthroscopy to address plaintiff's impingement syndrome.  On July 30, 2018, Mr. Tercero underwent an L4-5 laminectomy, discectomy and decompression surgery.  This surgery was performed to address the numbness and other symptoms in plaintiff's left leg.  The surgery has helped to mostly alleviate those symptoms.  Plaintiff does still suffer from lower back pain and some weakness or tingling in his left buttock area.

On October 15, 2018, plaintiff underwent a right shoulder arthroscopy with subacromial decompression.  As of the present time, plaintiff remains in physical therapy and has not been declared to be at MMI.

At the time of the accident, Mr. Tercero had an annualized income of $39,456.00, according to Dr. Randy Rice, the plaintiff's expert economist.  As a result of the accident, Dr. Rice estimates that plaintiff has lost $90,106.00 in income from the date of accident through trial.  Mr. Glenn Hebert, the plaintiff's vocational rehabilitation expert, believes it is possible that Mr. Tercero could return to work earning $7.25 to $8.00 per hour.  Dr. Rice estimates Mr. Tercero has a work-life expectancy of 11.98 years and that if Mr. Tercero returns to work earning between $7.25 and $8.00 per hour, the present value of the mid-point of his losses totals between $233,698.00 and $318,394.00 (depending on whether Mr. Tercero can work 20 or 40 hours/week).  Mr. Hebert also hypothesized, using the *Gamboa* study, that Mr. Tercero's work-life would be reduced due to his physical disabilities/surgeries/injuries.  Using the *Gamboa* study, the plaintiff's

work-life would be reduced to 5.88 years and, according to Dr. Rice, result in a loss of future earning capacity between $320,737.00 and $363,090.00 (again depending on whether plaintiff can work 20 or 40 hours/week).

**6(b) A brief summary of the material facts claimed by defendant, OCEANEERING are:**

This case has a very simple fact scenario on how plaintiff, Nestor Tercero, allegedly injured himself aboard defendant, Oceaneering International's vessel M/V OCEAN INTERVENTION. At the time of this alleged, unwitnessed accident, plaintiff was employed by defendant, Encore, a catering company, as a galley hand aboard M/V OCEAN INTERVENTION. The evidence will show that he was not a borrowed servant of Oceaneering. He was working the night watch and had been asked by the night cook to clean the ceiling in the galley.  This particular duty, i.e. cleaning the galley, including the ceiling, is part of the normal duties of a galley hand.  Mr. Tercero was asked to perform a duty that is carried out in galleys on vessels in the maritime trade all over the world.  There was nothing unusual about the night cook's request.  Allegedly, plaintiff was injured when he fell off the stepstool that he had chosen to use while cleaning the galley's ceiling.  Plaintiff admitted to the night cook, the night of the accident, that he had one foot on the stepstool and one foot on a swivel top seat at the time he fell.  According to plaintiff, the vessel was rocking because of rough seas.  As will be discussed below, nothing could be further from the truth regarding the alleged "rough seas" and inadequate equipment aboard M/V OCEAN INTERVENTION.

Below is a photo of M/V OCEAN INTERVENTION.  As you can clearly see, this vessel is a large ocean going vessel.  The vessel has registered dimensions of 221.3' x 54' x 19' with a gross tonnage of 2,262 and has been assigned U.S. Coast Guard Official No. 1066873 and IMO No. 9203227.  The mess deck overhead (ceiling) is constructed of drop-in acoustical panels in a metal grid with a height of only 89" (7'5").  The vessel's logs for the time of this alleged accident indicate

that the seas were only an average of 2 feet in height with maximum waves of 4 feet.  The winds were coming from the East at an average speed of 10 Knots and a maximum of 14 Knots.  As the testimony from the Captain and Bridge Officer will reveal at trial, these sea conditions are not even noticeable on a ship the size of M/V OCEAN INTERVENTION.



In addition to the stepstool plaintiff chose to use to perform his duties, there was also a stepladder for plaintiff to use to perform the task mentioned above.  The stepstool is constructed of aluminum with a plastic cap and has an overall height when open for use of 25¼".  Two aluminum 3" x 13⅞" steps are fitted at heights of 8¼" and 16¾" from the bottom of the stepstool. The cap of the stepstool is approximately 13¾" x 6".  As the photo below reveals, the stepstool was in good condition and suitable for service.



Also available on board were a few Werner 4' stepladders.  The units are 46" tall when open for use and have three steps located at the 11", 22½", and 34" above the bottom.  Plaintiff chose to use the stepstool which was quite suitable and safe to perform the task of cleaning the galley's ceiling.



8

The plaintiff is alleging that the stepstool he chose to use was unsafe for the task at hand. Parenthetically, Judge Africk granted defendants' Motion to Strike the Testimony of plaintiff's designated liability expert, Mr. Robert Borison, primarily because his testimony would not add anything to the jury's understanding of the case and that the jury's own common sense was all that was needed to decide this case. If plaintiff did in fact fall from the stepstool, it was caused by his own inattentiveness and other acts of negligence on his part.

The three main disputes are/were 1) whether the stepstool plaintiff chose was appropriate for the task at hand and 2) whether the plaintiff was in need of both low back and shoulder surgery as a result of this accident. The latter issues were claims against his employer, Encore, as his Jones Act Seaman employer, pursuant to the doctrine of maintenance and cure. Thus far, Encore has been paying plaintiff maintenance, and in the past months the plaintiff has undergone back surgery (L4-5 discectomy) and a surgery to his right shoulder by Dr. Wyatt, a handpicked orthopedic surgeon.

The plaintiff's case against Oceaneering is that they failed to provide him with a safe method to clean the galley's ceiling. Additionally, plaintiff claims that cleaning the galley's ceiling was not within his scope of duties as a galley hand. It is Oceaneering's position that neither of these allegations hold water and that the case really boils down to a maintenance and cure claim against his employer, Encore. The legal issue, as it concerns Oceaneering, is whether it provided plaintiff with a seaworthy vessel and a safe environment to work. The obvious weakness in plaintiff's case against Oceaneering is that there is a better than not chance that the jury will use its God given common sense and see through plaintiff's allegations against Oceaneering.

The damages claimed by plaintiff consist of lost wages and pain and suffering.

In a very recent deposition of Dr. Wyatt, he testified that 1) the low back surgery was successful and plaintiff should reach MMI soon and return to work as a galley hand and 2) the shoulder surgery was performed with a scope and he eliminated all the impingement.  Plaintiff is going to PT for both surgeries and as soon as he completes it, he should be able to return to work as a galley hand.

### c.  By Encore Food Services, LLC

Plaintiff worked as a utility hand.  He was assigned to the M/V Ocean Intervention, an Oceaneering vessel.  He was one of two Encore employees on the M/V Ocean Intervention.  Both were utility hands.  The hands worked opposite shifts and were supervised by Oceaneering cooks.  This was not the first time that the plaintiff had worked as a utility hand.  He spent several years working as a utility hand for SONOCO before coming to work for Encore.  Despite this, Encore provided training to the claimant.

On September 7, 2016 plaintiff's Oceaneering supervisor, Cleodis Poindexter, ordered the plaintiff to clean the ceilings in the mess area.  Therefore, he went into the closet of the galley and retrieved a two step stool.  Poindexter saw him grab the stool but did not try to stop him or warn him about using the stool to clean the ceiling.

Plaintiff was cleaning the ceiling between the tables.  For some reason he stepped of the stool with one of his feet and placed it on a chair.  The chairs are bolted to the floor but they do swivel.  Plaintiff alleges that as he put his foot on the chair it swiveled and he fell.

Plaintiff reported the accident to Poindexter but did not seek treatment right away.  Later in his shift he began to hurt and requested medical treatment.  He saw the medic on board.  The next day he was flown in to shore.  He claimed back and shoulder injuries.

10

After visits at Occupational Medicine Services claimant began treating with Dr. David Wyatt.  After conservative treatment on July 30, 2018 Dr. Wyatt performed a left sided L4-5 laminectomy with discectomy and left L4-5 decompression of the foramen and foraminotomy.  On October 15, 2018 he performed a right shoulder arthroscopy with subacromial decompression and distal clavicle resection.

Dr. Wyatt testified on November 29, 2018 that plaintiff had 6-10 weeks of physical therapy ahead of him.  He would likely be released to MMI at the time of the completion of physical therapy.  Dr. Wyatt anticipated the plaintiff returning to his job of injury "as long as he's not having to lift 100 pounds, big heavy stuff like that." (Deposition of Dr. Wyatt, page 34).  Dr. Wyatt had no restrictions for the plaintiff's shoulder.  Dr. Wyatt planned to release the plaintiff on a return as needed basis at that point and discontinue all narcotic pain medication.  Dr. Wyatt planned to place the claimant on naproxen for the plaintiff at his last appointment and would instruct the plaintiff to move to over the counter anti-inflammatories when the naproxen ran out.

On information and belief all of the plaintiff's medical treatment that has been billed (physical therapy is ongoing) has been paid.  Plaintiff has been paid maintenance at $245 per week since the date of the accident.

Nancy Favaloro issued an opinion on January 22, 2018 --- which now may not be needed, given Dr. Wyatt's testimony that plaintiff should be able to return to his job of injury --- that plaintiff could return to work making between $8.81 and $13.27 an hour.  This was based on an assessment by Dr. Nutik that plaintiff would be limited to light duty.

Dr. Kenneth Boudreaux issued an economic report on January 23, 2018.  He estimated plaintiff's pre-injury earning capacity at $23,112.76.  He determined, based on Ms. Favaloro's report, that plaintiff would be able to return to employment at $20,621.12.  He placed past lost

wages (as of the date of the report) at $30,701.50 and future earning capacity, assuming a work life of 11.12 years, at a maximum of $21,365.54.

Plaintiff's damages allegations are overstated and inflated.  Glenn Hebert's assessment of plaintiff's ability to return to work is inconsistent with Dr. Wyatt's description of what plaintiff will be able to perform.  It is not clear that plaintiff will have any loss of earning capacity.  Encore reserves the right to object to the testimony of Glenn Hebert and Dr. Randolph Rice as not being supported by the facts of the case.

The parties and the court agreed at the pretrial conference on January 15, 2019 that maintenance and cure issues would not be presented to the jury and that item 11 would be removed. Encore objects to plaintiff's decision to include the issue of cure in this revised pretrial order.

7.      **UNCONTESTED MATERIAL FACTS:**

1.  On September 7, 2016, Defendant OCEANEERING was the operator of the vessel M/V OCEAN INTERVENTION;

2.  Encore personnel, including plaintiff, were performing catering-related duties aboard the M/V OCEAN INTERVENTION pursuant to a written contract between OCEANEERING and Encore.

8.      **CONTESTED ISSUES OF FACTS:**

1.      The facts and circumstances of plaintiff's accident;

2.      The negligence of the defendants, if any;

3.      Whether the M/V OCEAN INTERVENTION was unseaworthy;

4.      Whether the negligence of the defendants and/or the unseaworthiness of the vessel caused or contributed to plaintiff's accident and injuries;

5.      The comparative fault of the parties;

6.      The nature and extent of plaintiff's medical treatment;

7.      Plaintiff's medical prognosis and whether plaintiff has reached MMI;

8.      The extent, nature, and residuals of plaintiff's damages, disabilities, and injuries;

9.      Whether plaintiff will be able to return to his former employment or any employment;

10.     The nature and amount of plaintiff's damages, including damages for past and future pain and suffering, loss of enjoyment of life, wage loss and loss of earning capacity;

11.     Whether plaintiff is entitled to unpaid cure and the amount thereof;

12.     Plaintiff's pre-accident medical status;

13.     Whether plaintiff had an accident aboard the M/V OCEAN INTERVENTION, as alleged;

14.     The manner in which plaintiff's alleged accident occurred;

15.     The nature and extent, if any, of any injuries to plaintiff as a result of his falling off the stepstool aboard the M/V OCEAN INTERVENTION;

16.     Whether plaintiff sustained a herniated disc at L4-5 and L5-S1 and a right shoulder injury as a result of the alleged incident on September 7, 2016;

17.     Whether according to plaintiff's treating orthopedic plaintiff can return, unrestricted, to work as a galley hand after he completes his physical therapy and reaches maximum medical improvement;

18.     Whether or not the plaintiff is disabled in any way;

19.     Whether plaintiff is a borrowed servant of Oceaneering, including fact issues regarding the following:

        a.      Who had control over the plaintiff and the work he is performing, beyond mere suggestion of details or cooperation?

        b.       Whose work was being performed?

        c.      Was there an agreement, understanding, or meeting of the minds between Encore and Oceaneering?

        d.      Did the plaintiff acquiesce in the new work situation?

13

  e.  Did Encore terminate his relationship with the plaintiff?

  f.   Who furnished tools and place for performance?

  g.  Was the new employment over a considerable length of time?

  h.  Who had the right to discharge the plaintiff?

  i.  Who had the obligation to pay the plaintiff?

**9.**  **CONTESTED ISSUES OF LAW**

  1.  Whether plaintiff was negligent;

  2.  Whether the defendants were negligent;

  3.  Whether the M/V OCEAN INTERVENTION was unseaworthy;

  4.  Whether the negligence of the defendants and/or the unseaworthiness of the vessel caused or contributed to plaintiff's accident;

  5.  Whether plaintiff is entitled to damages and the amounts thereof;

  6.  Whether plaintiff was a Jones Act employee of OCEANEERING on the date of the accident alleged herein;

  7.   Whether the M/V OCEAN INTERVENTION was unseaworthy as a result of the use of the stepstool in question;

  8.  Whether Defendant OCEANEERING was negligent under the General Maritime Law;

  9.  If the plaintiff suffered an accident as alleged, his comparative negligence, if any;

  10.  Whether plaintiff was the borrowed servant of Oceaneering;

  11.  Any issues of law implicit in the foregoing contested issues of fact.

**10.**  **EXHIBITS:**

**Plaintiff may offer and introduce the following exhibits:**

  1.  Photographs, drawings, diagrams and/or other representations of the accident scene

and apparatus involved in accident, the OCEAN INTERVENTION and exemplar ladders;

2.        Oceaneering Initial Incident Investigation report;

3.        Encore Incident Report;

4.        OCEAN INTERVENTION Weekly Galley Inspection form;

5.        OCEAN INTERVENTION Daily Vessel logs;

6.        Encore Food Services QHSE Policy and Procedures;

7.        Encore Food Service Safety Manual;

8.        Encore Food Service Employee Handbook;

9.        Contractor Access Agreement;

10.       Medical Records of Dr. David Wyatt/Orthopaedic Care Center of Louisiana;

11.        Medical Records of Westbank Physicians Rehab;

12.       Medical records of LA MRI;

13.       Magnolia Diagnostics MRI Report;

14.       Spectrum Neurology Center EMG Report;

15a.      Operative Report (lumbar), Jefferson Ambulatory Surgery Center;

15b.      Operative Report (shoulder), Jefferson Ambulatory Surgery Center;

16.       Medical records of Occupational Medicine Services;

17.       Plaintiff's Social Security Earnings Statement

18.       Plaintiff's W-2 forms;

19.       Plaintiff' payroll records – Encore Food Services

20.       Plaintiff's personnel file – Encore Food Services (Except for Pages 46, 47 and 48, which is a copy of correspondence from counsel for Oceaneering to counsel for Encore.);

21.       Oceaneering HSE Handbook;

22.       Oceaneering Marine Operations Manual;

23.     Oceaneering Safety Management Sytem Manual;

24.     Reports of Oceaneering HSE Weekly Safety Meetings;

25.     Oceaneering Weekly Safety Topics, June 2016 to December 2016;

26.     Reports of Oceaneering JSEAs;

27.     Reports of Oceaneering Monthly Equipment Training;

28.     Reports of Oceaneering Safety Drills, Meetings and Exercises;

29.     Oceaneering Observation Reports;

30.     Encore Invoices to Oceaneering;

31.     Oceaneering job description for a galleyhand.

32.     Oceaneering's Response to Request for Admissions, 2/22/19.

## **OBJECTIONS**

**Objections by defendant, Oceaneering:**

1.     Defendant objects to plaintiff's Exhibit 1 insofar as it includes anything related to exemplar ladders for the following reasons:

     a.  Based on authentication, as there is no foundation for any of the references to Plaintiff's proposed exemplar ladders being available, suitable, or permitted aboard the M/V OCEAN INTERVENTION; and further, Plaintiff has never timely produced either the exemplar ladders or photographs of the exemplar ladders he intends to introduce.

     b.  Relevance  (FRE 401)

     c.  Insofar as the  proposed exhibit may be relevant, its relevance is outweighed by dangers of unfair prejudice, confusion and misleading the jury. (FRE 403)

2.     Defendant objects to the newly listed exhibits set out below, as they are not relevant to the  limited subject area of borrowed servant allowed by the court.  They are also objected to on the basis that they would tend to confuse the jury and cause undue prejudice to defendant under FRE 403.  The exhibits objected to are the following.:

21.     Oceaneering HSE Handbook;
23.     Oceaneering Safety Management System Manual;
24.     Reports of Oceaneering HSE Weekly Safety Meetings;
25.     Oceaneering Weekly Safety Topics, June 2016 to December 2016;

26.    Reports of Oceaneering JSEAs;
27.    Reports of Oceaneering Monthly Equipment Training;
28.    Reports of Oceaneering Safety Drills, Meetings and Exercise
29.    Oceaneering Observation Reports;

3.    Defendant objects to Plaintiff's exhibit 32  for relevance and under FRE 403 on the basis that they would tend to confuse the jury and cause undue prejudice to defendant.

**Objections by Encore:**

1. Encore joins Oceaneering's objections to plaintiff's exhibits.

**Defendant Oceaneering's Exhibits:**

1. Photos of the M/V OCEAN INTERVENTION and its galley, step stool and available step ladder

2. Incident Report

3. Release to Return to Work

4. Work Description for plaintiff

5. Weather Ops – Daily Planner

6. Vessel logs for M/V OCEAN INTERVENTION

7. Patient Tracking Record on plaintiff from Occupational Medicine Services

8. Statement by plaintiff

9. Statement by Cleodis Poindexter

10. Contractor Access Agreement between Oceaneering International, Inc. and Encore Food Services, including Purchase Order Terms and Conditions and Vendor/Supplier Non-Disclosure Agreement

11. Oceaneering's Equipment Movement Order

12. Encore Food Services, LLC's Check Register

13. Encore Incident Report

14. Plaintiff's personnel file while employed by Encore Food Services

15. Post Offering Evaluation by Occupational Medicine Services, L.L.C.

16.  Oceaneering Five X Five

17.  OCEAN INTERVENTION Weekly Galley Inspection

18.  Sontheimer Offshore/Catering Co. – employment records

19.  Plaintiff's driver's license

20.  Plaintiff's Visas

21. Deposition transcript of Cleodis Poindexter

22.  Medical Bills of Folse Pharmacy

23. The bills or records of any other pharmacy where plaintiff obtained prescriptions

24. Encore Invoices to Oceaneering

**<u>OBJECTIONS:</u>**

**By plaintiff:**

1.      Plaintiff objects to Exhibit 1 insofar as it includes photos of an alleged "available step ladder." Absent any evidence that the ladder was available on the date of plaintiff's accident, the photo is not authenticated as an "available step ladder" and otherwise lacks foundation as such. Plaintiff does not object to the photo as an exemplar of other ladders which should have or could have been provided to the plaintiff.  The Court has deferred ruling on this objection in its Order dated 2/28/2019 [Doc. 131].

2.      Plaintiff objects to Exhibit 4 – Work Description for plaintiff. The exhibit is not a work description for plaintiff's job with the defendants, but instead is a job description from one of plaintiff's former employers. As such, it is not relevant to the present matter under FRE 401, et seq.

3.      Plaintiff objects to Exhibit 9 – Statement of Cleodis Poindexter – as hearsay, FRE 801 et seq.  The Court has excluded this exhibit in its Order dated 2/28/2019 [Doc. 131] but indicated it may revisit the issue if Mr. Poindexter testifies at trial.

4.      Plaintiff objects to Exhibits 21 and 22 – Plaintiff's driver's license and visas – as not relevant to any fact at issue in this litigation pursuant to FRE 401, et seq.  Insofar as the documents may be relevant, their relevance is outweighed by dangers of unfair prejudice and other matters set forth in FRE 403. As set forth in plaintiff's Motion for a Protective Order, plaintiff believes that the defendants are improperly using his immigration status in order to harass, annoy, embarrass or for otherwise improper purposes, including attempts to manufacture credibility issues when none exist or based upon inquiries during a deposition into matters which are not relevant to the claims of any parties herein. The Court has deferred ruling on this objection in its Order dated 2/28/2019 [Doc. 131].

5.      Plaintiff objects to newly listed Exhibits 22 and 23 – pharmacy records. The exhibits are not relevant to the  limited subject area of borrowed servant allowed by the court and are untimely.  Insofar as the exhibits are timely, the pharmacy records are not relevant to nay fact at issue under FRE 401, et seq., as plaintiff's medical expenses are not in dispute; as set forth below, on information and belief, plaintiff's maintenance and cure expenses have been paid. Insofar as the records may be relevant, any probative value is outweighed by the danger of unfair prejudice and other factors by which they should be excluded under FRE 403.

**By Encore:**

1.      Encore joins plaintiff's objection to Oceaneering's Exhibit 4.

**Encore Food Services, LLC may offer the following exhibits:**

1.      History of maintenance payments made by Encore Food Services, LLC

2.      History of maintenance and cure payments by StarStone Insurance Company (to be updated at trial)

3.      Deposition transcript of Dr. Wyatt dated November 29, 2018

4.      Plaintiff's Answers to Second Set of Interrogatories from Oceaneering International, Inc.

5.      Plaintiff's Training file at Encore Food Services, LLC.

6.      Statement of Nestor Tercero dated September 8, 2016

7.      Statement of Cleodis Poindexter dated September 8, 2016

8.      Deposition of Cleodis Poindexter, with page 62, line 13 to page 64, line 4 excluded and Ex. 7. Excluded

9.      Social Security Earnings Records of the claimant.

10.     Any exhibits identified in the additional discovery allowed by the Court in its order of January 22, 2019.

**OBJECTIONS:**

**By the plaintiff:**

1.      Plaintiff objects to Encore Exhibits 1 and 2 – history of maintenance and cure payments – as, on information and belief, maintenance and cure has been paid up-to-date and the issue is not one to be presented to the jury,

2.      Plaintiff objects to Exhibit 7– Statement of Cleodis Poindexter – as hearsay, FRE 801 et seq.  The Court has excluded this exhibit in its Order dated 2/28/2019 [Doc. 131] but indicated it may revisit the issue if Mr. Poindexter testifies at trial.

11.     **DEPOSITION TESTIMONY**

The parties reserve the right to introduce any and all deposition testimony taken or to be taken in this matter, as allowed by the Federal Rules of Civil Procedure. They specifically reserve

the right to use the deposition testimony of any witness unavailable to testify live at trial or beyond

the subpoena power of this Court.

**Defendants:**

1. Cleodis Poindexter

2. Patrick Walsh

12.    **TRIAL AIDS:**

Plaintiff and Defendants reserve their right to use enlargements of any exhibits as well as

diagrams or illustrations which may assist in understanding the testimony and use it as

demonstrative aids during the trial of this matter.

Plaintiff may utilize exemplar ladders as demonstrative aids.

13.    **WITNESSES:**

**By Plaintiff, Nestor Tercero:**

Plaintiff will call the following witnesses:

1.    Nestor Tercero, Plaintiff
      To testify regarding the facts and circumstances of his accident, his employment
      with defendants, defendant's policies and procedures, his injuries, his medical
      treatment, pain and suffering, his disabilities and damages.

2.    G. Randolph Rice, Ph.D.
      7048 Moniteau Court
      Baton Rouge, LA  70809
      Expert economist; to testify regarding plaintiff's past and future wage loss/loss of
      earning capacity, damages;

3.    Dr. David Wyatt
      Orthopaedic Care Center of Louisiana
      2930 Canal Street
      New Orleans, LA
      Expert, orthopaedic surgery.  To testify regarding his examination and treatment of
      the plaintiff, his injuries, diagnoses, prognosis, disability and damages

4.    Glenn M. Hebert, MRC
      1538 W. Pinhook Road

Lafayette, LA  70503
Expert, vocational rehabilitation.  Mr. Herbert will testify regarding the plaintiff's
future employment potential and other vocational matters.

Plaintiff may call:

1.      Dr. David Dunn
        Westbank Physicians Rehab
        4140 Westbank Expressway
        Marrero, LA  70072
        General practice; To testify regarding his examination and treatment of the plaintiff,
        his injuries, diagnoses, prognosis, disability and damages

2.      Dr. Jeffery Laborde
        Louisiana MRI
        2919 Harvard Avenue
        Metairie, LA  70006
        Expert radiologist; To testify regarding his examination and treatment of the
        plaintiff, his injuries, diagnoses, prognosis, disability and damages

3.      Dr. Andrew Varady
        Magnolia Diagnostics
        2700 Cadiz Street
        New Orleans, LA 70115
        Expert radiologist;To testify regarding his examination and treatment of the
        plaintiff, his injuries, diagnoses, prognosis, disability and damages

4.      Dr. Troy Beaucodray
        Spectrum Neurology Center
        3409 Division Street
        Metairie, LA  70002
        Expert neurologist; To testify regarding his examination and treatment (EMG) of
        the plaintiff, his injuries, diagnoses, prognosis, disability and damages

5.      Cleodis Poindexter
        1950 Roswell Road
        Marietta, GA
        Under cross examination; cook aboard the M/V OCEAN INTERVENTION; To
        testify regarding the facts and circumstances of the accident, his employment with
        defendants, defendants' policies and procedures;

6.      Ken Steward
        c/o Encore Food Services
        To testify regarding his knowledge of the plaintiff's employment with Encore and
        aboard the M/V OCEAN INTERVENTION, plaintiff's employment or other
        relationship with Oceaneering International, Inc., factors related to plaintiff's

22

borrowed servant or other employment status, his knowledge about contracts or other agreements between the defendants.

7.    Patrick Walsh
C/o Oceaneering International
To testify regarding their knowledge of the facts and circumstances of plaintiff's accident and defendants' policies and procedures, factors related to plaintiff's borrowed servant or other employment status, his knowledge about contracts or other agreements between the defendants.

8.    Edward Salter
C/o Oceaneering International
To testify regarding their knowledge of the facts and circumstances of plaintiff's accident and defendants' policies and procedures, ., factors related to plaintiff's borrowed servant or other employment status, his knowledge about contracts or other agreements between the defendants.

9.    Gordon Nutik, M.D.
4224 Houma Blvd., Suite 270
Metairie, LA 70006
Expert Orthopaedic surgery; defendants' retained but not listed medical expert. To testify regarding his examination of the plaintiff, his injuries, diagnoses, prognosis, disability and damages, in accordance with his report of January 11, 2018.

10.    Myron Lopez
President, Encore Food Services, LLC
Mr. Lopez would testify as to the training provided to Encore employees, including the plaintiff, and other aspects of plaintiff's employment with Encore.

11.    Any witness listed or called by any other party.

Plaintiff's witness list was filed in accordance with the Federal Rules of Civil Procedure and prior court orders.

**Defendant, OCEANEERING will call the following witnesses:**

1.    Edward V. Salter-Captain aboard M/V OCEAN INTERVENTION at the time of plaintiff's alleged accident.  He is knowledgeable about the short time the plaintiff was on the vessel, plaintiff's report of the incident, and the alternative equipment available to plaintiff to do the task he was doing at the time of his alleged accident.  He can also testify to the weather and sea conditions at the time of the plaintiff's alleged accident.  Finally, he will testify regarding the dimensions of the galley in question.

2. Patrick Walsh-was the Bridge Officer on watch at the time of plaintiff's alleged accident. He has knowledge of plaintiff reporting the alleged accident, medical care on the vessel before being sent to shore as well as the alternative equipment plaintiff could have used, had he chosen, to perform the task he was performing at the time of his alleged accident. He can also testify to the weather and sea conditions at the time of the plaintiff's alleged accident as well as the dimensions of the area where plaintiff claims to have had his accident.

3. Cleodis Poindexter-was the night cook employed by Oceaneering and on duty at the time of plaintiff's alleged accident. He will testify regarding the duties of plaintiff and equipment available to him at the time of his alleged accident. He will also be able to testify regarding the action he and the plaintiff took after the accident. He presently lives outside the jurisdiction of this Court so his deposition will more likely than not be introduced and read to the jury.

**Defendant, OCEANEERING may call the following witnesses:**

1. Plaintiff Nestor Tercero-under cross-examination.

2. Ken Steward-former employee of Encore who has firsthand knowledge of plaintiff's employment and initial medical treatment.

3. Norman J. Dufour, Jr.-He will testify regarding the measurements he took of the scene of the accident, including height of the ceiling plaintiff was allegedly cleaning at the time of his alleged accident.

4. Dr. Kenneth Boudreaux
   Dan. M. Cliffe, CPA
   Dr. J Stuart Wood
   Dr. John R. Page, CPA
   -expert economist who will testify regarding plaintiff's claim for lost past, present, and future wages.

5. Nancy Favaloro-expert in vocational rehabilitation who will testify regarding her examination and testing of plaintiff as well as the types of jobs he is capable of performing after he reaches MMI.

6. Representative of Sontheimer Offshore/Catering Co.-plaintiff's former employment while employed by Sontheimer Offshore/Catering Co.

7. Myron Lopez
   President, Encore Food Services, LLC

Mr. Lopez would testify as to the training provided to Encore employees, including the plaintiff, and other aspects of plaintiff's employment with Encore.

8. Representative(s) on Encore Food Services, LLC - as may be identified through the limited discovery addressed in the Court's January 22, 2019 Order regarding the borrowed servant issue.


Oceaneering's witness list was filed in accordance with the Federal Rules of Civil Procedure and prior court orders.


**Encore Food Services, LLC will call the following witnesses:**

1. Nancy Favoloro, MS, CRC, LPC, Licensed Rehabilitation Counselor
   To testify regarding claimant's transferable skills, jobs that will be open to the plaintiff and post accident earning capacity of the plaintiff.

2. Dr. Kenneth Boudreaux
   Dan. M. Cliffe, CPA
   Dr. J Stuart Wood
   Dr. John R. Page, CPA
   One of the listed witnesses will testify as an economic expert as to plaintiff's past lost wages and future lost wages, if any.

**Encore Food Services, LLC may call the following witnesses:**

1. Myron Lopez
   President, Encore Food Services, LLC
   Mr. Lopez would testify as to the training provided to Encore employees, including the plaintiff, and other aspects of plaintiff's employment with Encore.

2. Christine Neuffer
   Ms. Neuffer is the adjuster in this case and may testify as to facts learned during the investigation of the claim and payments made during the case.

3. Any witness listed by any other party.

Encore's witness list was filed in accordance with the Federal Rules of Civil Procedure and prior court orders.

14.    **THIS IS A JURY CASE.**

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

15.    **QUANTUM**

The issue of liability will not be tried separately from that of quantum.

16.    **EXPEDITION**

No matters not heretofore incorporated might expedite a disposition of the case.

17.    **TRIAL TIME**

Trial shall commence on April 8, 2019 at 8:30 a.m.  It is estimated trial shall last 3-4½ days.

18.    **CONFERENCE**

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections or additions prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.    **SETTLEMENT**

Possibility of settlement of this case was considered.

DONE AND SIGNED at New Orleans, Louisiana, this _____ day of _____, 2019.

_____
UNITED STATES DISTRICT JUDGE

26

RESPECTFULLY SUBMITTED:

___s/ David C. Whitmore_____
LAWRENCE BLAKE JONES  (7495)
DAVID C. WHITMORE  (17864)
KRISTI A. POST  (17752)
Blake Jones Law Firm, LLC
701 Poydras Street, Suite 4100
New Orleans, Louisiana  70139
Telephone:  (504) 525-4361
Facsimile:  (504) 525-4380
jones@nola-law.com
dcw@nola-law.com
kpost@nola-law.com
Attorneys for Plaintiff, Nestor Tercero

**COTTEN SCHMIDT, L.L.P.**

**/s/ Richard M. Simses_____**
RICHARD M. SIMSES (12306)
25025 N. I-45, Suite 410
The Woodlands, Texas 77380
Telephone: (281) 824-3551
Facsimile: (281) 824-3555
rsimses@cottenschmidt.com

PAUL M. LAVELLE (08134)
650 Poydras St., Suite 1950
New Orleans, Louisiana 70130
Telephone: (504) 568-9393
Facsimile: (504) 524-1933
plavelle@cottenschmidt.com
**ATTORNEYS FOR DEFENDANT,**
**OCEANEERING INTERNATIONAL, INC.**

s/ Todd A. Delcambre_____
HENRY H. LEBAS #23185
TODD A. DELCAMBRE #23710
BARRY J. ROZAS #21849
2 Flagg Place, Suite 1
Lafayette, Louisiana 70508
Telephone: 337-236-5500
Facsimile: 337-236-5590
*Counsel for Encore Food Services, Inc.*

## **CERTIFICATE OF SERVICE**

I do hereby certify that on the 10th day of February, 2019, a copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record that have elected e-notification by operation of the court's electronic filing system.  I further certify that, on the aforementioned date, I also served a copy of the foregoing pleading upon all counsel of record who are non-CM/ECF participants via facsimile transmission and/or via hand delivery and/or via the United States mail, postage prepaid and properly addressed.

s/ David C. Whitmore