# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NESTOR TERCERO** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-7438** |
| **OCEANEERING INTERNATIONAL, INC. ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion[1] *in limine* filed by defendant Oceaneering International, Inc. ("Oceaneering"). Oceaneering moves the Court to prohibit plaintiff Nestor Tercero ("Tercero") from introducing into evidence several exhibits and portions of deposition testimony. For the following reasons, the motion is sustained in part, overruled in part, and deferred in part.

### I.

The facts of this case are familiar to the Court. Tercero alleges that he was injured on September 7, 2016 while working as a galley hand on board the M/V OCEAN INTERVENTION. Tercero claims that he slipped from a small step ladder when he was cleaning the galley ceiling, having been ordered to do so by the cook, an Oceaneering employee. Tercero asserts that the ladder was an improper piece of equipment with which to perform the task, and he alleges that he sustained personal injuries as a result of the fall.

---

[1] R. Doc. No. 144.

Tercero asserts claims for general maritime negligence and unseaworthiness, as well as a claim for Jones Act negligence, against Oceaneering. At the time of the accident, Tercero was employed by Encore Food Services, LLC ("Encore"). However, he asserts that he was a borrowed employee of Oceaneering at the time of his accident and, therefore, that he can recover for Oceaneering's negligence under the Jones Act.

On January 22, 2019, the Court ordered a continuance of the trial to allow Tercero to pursue the borrowed servant issue and to allow the parties to engage in limited discovery with respect to same.[2] Oceaneering objects to several of Tercero's new exhibits, alleging that they do not relate to the borrowed servant issue and that Tercero is circumventing the Court's order limiting additional discovery.

## II.

Pursuant to Rule 402 of the Federal Rules of Evidence, only relevant evidence is admissible. And Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he standard of relevance in an evidentiary context is not a steep or difficult one to satisfy." *Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014). However, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Relevant evidence is inherently prejudicial; but it is

---

[2] R. Doc. No. 69.

only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 356 (5th Cir. 2010) (citation omitted).

**III.**

Oceaneering argues that five of Tercero's exhibits listed in the revised joint pretrial order[3] are new exhibits irrelevant to the borrowed servant issue. The Court takes each in turn.

Exhibit 25

Tercero's exhibit 25 is a list of weekly safety topics from June 26, 2016 to December 25, 2016 that correspond to safety meetings aboard the OCEAN INTERVENTION.[4] Oceaneering argues that the exhibit should be excluded under Rule 401 because it is only relevant to safety aboard the OCEAN INTERVENTION.[5]

Tercero asserts that the exhibit also relates to the borrowed servant analysis.[6] Specifically, Tercero argues that because the safety meetings were conducted by supervisors on the OCEAN INTERVENTION, and because Tercero participated in the safety meetings, the exhibit demonstrates the control that Oceaneering exercised

---

[3] R. Doc. No. 140.
[4] R. Doc. No. 144-2, at 4.
[5] R. Doc. No. 144-1, at 2.
[6] R. Doc. No. 151, at 1. The borrowed servant analysis requires the Court or a factfinder to weigh nine factors. *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988). The first factor considers the level of control that the alleged borrowing employer exercised over the alleged borrowed employee. The third factor considers whether there was an agreement between the alleged borrowing employer and the actual employer that precludes a worker from becoming a borrowed employee; however, that factor also requires the Court to consider whether the parties' conduct impliedly modified that agreement or contract. *See id.* at 1245.

3

over Tercero and that Oceaneering's actions impliedly modified its contract with Encore.[7]

"Determination of the control factor requires the Court to distinguish 'between authoritative direction and control, and mere suggestion as to details of the necessary cooperation, where the work furnished is part of a larger undertaking.'" *Allen v. Texaco, Inc.*, No. 99-1456, 2001 WL 611391, at *3 (E.D. La. June 5, 2001) (Vance, J.) (quoting *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 313 (5th Cir. 1986)). The factfinder may consider who the employee took orders from and who told him "what work to do, and when and where to do it." *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 (5th Cir. 1988). "[P]arties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." *Id.* "The reality at the work site and the parties' actions in carrying out a contract . . . can impliedly modify, alter, or waive express contract provisions." *Allen*, 2001 WL 611391, at *3 (quoting *Melancon*, 834 F.2d at 1245).

Tercero points out that the exhibit refers to the Oceaneering Employee Handbook, which requires Oceaneering supervisors to conduct weekly safety meetings.[8] Tercero asserts that, because he attended safety meetings that were conducted by such supervisors, the exhibit demonstrates that Oceaneering exercised control over Tercero. Furthermore, he argues that, although the contract between

---

[7] R. Doc. No. 151, at 1–2; R. Doc. No. 139, at 6. Oceaneering and Encore entered into a contract that provides that Encore employees are independent contractors of Oceaneering.
[8] R. Doc. No. 151, at 2; R. Doc. No. 144-2, at 4.

4

Encore and Oceaneering states that Encore employees would be independent contractors of Oceaneering, Oceaneering's conduct—having supervisors conduct safety meetings for personnel like Tercero—may have modified this contract.[9]

The Court defers a ruling on the admissibility of exhibit 25 until trial. To the extent that Tercero participated in safety meetings and was instructed by Oceaneering supervisors how to perform certain tasks, the exhibit may be relevant to the issue of control and part of the borrowed servant analysis. However, to be admissible, the exhibit will have to be excised to include only the safety meetings that occurred while Tercero was on board the OCEAN INTERVENTION.

Exhibits 21(g) and 26

Oceaneering seeks to exclude Tercero's exhibits 21(g)[10] and 26,[11] arguing again that the exhibits relate only to safety procedures and not to the borrowed servant issue. Oceaneering explains that exhibit 21(g) is an excerpt from the Oceaneering Health, Safety, & Environment Handbook ("HSE") concerning the Job Safety Environmental Analysis ("JSEA").[12] The exhibit explains what a JSEA is, who is responsible for conducting JSEAs, and when a JSEA should be conducted.[13]

---

[9] R. Doc. No. 151, at 2; R. Doc. No. 139, at 6.
[10] R. Doc. No. 144-2, at 5.
[11] *Id.* at 9–66.
[12] *Id.* at 4
[13] *Id.* at 5–8. "JSEA is a checklist that breaks a job into steps, identifies the hazards for each step and the control measures for each hazard. The JSEA process is a system of controls for all personnel performing task/duties that may have the potential to cause harm either to people, the environment, and equipment." *Id.* at 5.

5

Exhibit 26 is a compilation of five JSEAs related to five separate jobs that were completed in the OCEAN INTERVENTION's galley.[14] Only one of the jobs and its accompanying JSEA was completed while Tercero was on board the OCEAN INTERVENTION.[15]

Tercero argues that these exhibits relate to the borrowed servant issue insofar as they demonstrate the duty that Oceaneering supervisors have to instruct crewmembers before they perform a task and to make sure that the employees have the proper equipment for the job.[16] Officer Patrick Walsh testified that supervisors are responsible for ensuring that employees have the proper equipment, which is the basis for Tercero's claims.[17]

The Court finds that exhibits 21(g) and 26 are relevant to the borrowed servant issue because they relate to factors in the borrowed employee analysis, such as control. However, exhibit 26 shall be limited only to the September 4, 2016 JSEA involving Tercero.[18] Therefore, the objection to exhibit 21(g) is overruled, and the objection to exhibit 26 is overruled in part and sustained in part.

---

[14] *Id.* at 9–66.
[15] *Id.* at 22–32. Tercero is only listed in the JSEA completed on September 4, 2016 for cleaning the oil in the deep fryer.
[16] R. Doc. No. 151, at 3. Tercero also argues that the exhibits should be admissible because they were produced and shown to Walsh at his deposition and Oceaneering did not object at that time. Simply because an exhibit was referred to in a deposition does not mean that it can be admitted into evidence over the defendants' objections.
[17] R. Doc. No. 144-2, at 60 (deposition of Patrick Walsh).
[18] *Id.* at 22–32.

Exhibits 27 and 28

Exhibits 27 and 28 are forms that record the occurrence of equipment training meetings aboard the OCEAN INTERVENTION; the forms include a list of the persons who attended the meetings.[19] Exhibit 27 is a record of meetings held on September 11, 2016 and September 18, 2016.[20] Exhibit 28 is a record of two meetings held on September 4, 2016.[21] Again, Oceaneering argues that these exhibits do not relate to the borrowed servant issue, but are only relevant to the issues of safety and Oceaneering's procedures.

Tercero argues that these exhibits relate to the borrowed servant issue because they demonstrate that Oceaneering impliedly modified its contract with Encore, which indicates that Tercero was an independent contractor of Oceaneering.[22] Specifically, Tercero asserts that the form noted Tercero and other Encore personnel's attendance at the meeting under the heading "vessel crew," which shows, therefore, that Oceaneering deemed Tercero and other Encore personnel part of the vessel's crew similar to the Oceaneering employees.[23]

Oceaneering asserts that a pre-printed form and list of those who attended the equipment training meeting is not indicative of borrowed servant status.[24] However,

---

[19] *Id.* at 51–52.
[20] *Id.*
[21] *Id.* at 53–54.
[22] R. Doc. No. 151, at 3.
[23] *Id.*
[24] R. Doc. No. 144-1, at 4.

7

Tercero compares exhibits 27 and 28 to a daily vessel log, which also lists Tercero as part of the vessel crew while listing other persons as "non crew/offshore workers."[25]

The Court finds that exhibit 28 is relevant to the borrowed servant issue because it suggests that Oceaneering may have considered Tercero one of its vessel crewmembers like its other employees, potentially modifying the contract with Encore. Furthermore, its probative value is not substantially outweighed by the dangers of misleading the jury, wasting time, or needlessly presenting cumulative evidence under Rule 403. The objection as to exhibit 28 is overruled.

However, exhibit 27 is not admissible as Tercero was not on the vessel at the time of those meetings. The objection to exhibit 27 is sustained because it is not relevant under Rule 401 and, to the extent that it is relevant, its probative value is substantially outweighed by the dangers of misleading the jury and confusing the issues under Rule 403.

**IV.**

Oceaneering also objects to the inclusion of deposition testimony by Officer Patrick Walsh ("Walsh") and Tercero.

<u>Walsh Deposition Testimony</u>

Oceaneering argues that Walsh's testimony related to JSEAs should be excluded because it is not relevant to Tercero's borrowed employee status. During the deposition, counsel for Tercero questioned Walsh about the various safety forms and procedures that should be completed in conjunction with performing a task on

---

[25] R. Doc. No. 151-1.

8

the vessel. Counsel for Tercero specifically questioned Walsh about the tools that should be available to Oceaneering employees to perform certain tasks and who is responsible for providing the tools.[26]

Tercero argues that counsel for Oceaneering did not object to the testimony at the time of the deposition and that the objection, therefore, is waived. Tercero also argues that the testimony should be admissible because Walsh's deposition was taken for trial purposes and it was not limited to the borrowed servant issue.[27] To that end, Tercero argues that the testimony is related to safety and the duty of supervisors to prepare employees for performing tasks, issues relevant to the case.

The Court will not decide this issue based on the purported objection waiver issue. Although the testimony arguably relates to safety issues, such testimony is also relevant to the borrowed servant issue. Walsh explained who has the duty to provide tools for performance and the procedures that Oceaneering supervisors and employees must follow before performing various tasks. Furthermore, the probative value of the testimony is not substantially outweighed by the dangers of unfair prejudice, misleading the jury, wasting time, or presenting cumulative evidence under Rule 403. The objection is overruled.

---

[26] R. Doc. No. 144-1, at 9 (citing deposition of Patrick Walsh, R. Doc. No. 144-2, at 59–60).
[27] R. Doc. No. 151, at 4.

Deposition of Nestor Tercero

Finally, Oceaneering objects to a limited portion of Tercero's March 15, 2019 deposition.[28] Oceaneering argues that Tercero reached the legal conclusion that a galley is necessary to the operation of a ship without laying the proper foundation. Tercero specifically testified that the galley was necessary for a ship to do its work because "[y]ou can't work if you don't eat."[29]

Tercero argues that he laid a proper foundation with respect to this testimony, as he testified that he has five to six years of experience working offshore and on vessels, and much of that experience involved work in vessel kitchens.[30]

Tercero's testimony is in the nature of lay, not legal, opinion. Notwithstanding, although Oceaneering does not argue that the question and answer were irrelevant, the Court questions the relevance of such testimony. The Court defers a ruling on the objected-to testimony until trial.

V.

Accordingly,

**IT IS ORDERED** that Oceaneering's motion *in limine* to exclude Tercero's exhibits is **SUSTAINED IN PART**, **OVERRULED IN PART**, and **DEFERRED IN PART**, as stated herein.

**IT IS FURTHER ORDERED** that Oceaneering's objection to Patrick Walsh's deposition testimony is **OVERRULED**.

---

[28] R. Doc. No. 144-1, at 10.
[29] *Id.*; R. Doc. No. 144-2, at 65–66.
[30] R. Doc. No. 151, at 2–5.

**IT IS FURTHER ORDERED** that Oceaneering's objection to Tercero's deposition testimony is **DEFERRED**.

New Orleans, Louisiana, April 2, 2019.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**